**SAUL H. PERLOFF**
Texas Bar No. 157092 (*Pro Hac Vice*)
**KATHARYN A. GRANT**
Texas Bar No. 24050683 (*Pro Hac Vice*)
**FULBRIGHT & JAWORSKI L.L.P.**
300 Convent Street, Suite 2100
San Antonio, Texas  78205-3792
Telephone:    (210) 224-5575
Telecopier:    (210) 270-7205
sperloff@fulbright.com
kgrant@fulbright.com
Attorneys for Plaintiff Alliance Labs, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alliance Labs, LLC, a limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Stratus Pharmaceuticals, Inc., a Florida corporation,<br><br>Defendant. | Case No. CV 12-00927-JWS<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT STRATUS PHARMACEUTICALS, INC.'S ABUSIVE RULE 12 MOTIONS (DOCKET NOS. 34 AND 35)** |

Plaintiff Alliance Labs, LLC ("Alliance") submits this response in opposition to Defendant Stratus Pharmaceuticals, Inc.'s ("Stratus") procedurally improper and abusive motion to dismiss Counts II, IV, V and VII of Alliance's Amended Complaint for alleged lack of standing under Rule 12(b)(1); motion to dismiss Count IV under Rule 12(b)(6) (Docket 34); and motion for more definite statement under Rule 12(e).  (Docket 35).

## PROCEDURAL POSTURE OF THE CASE

Alliance served Stratus with its initial Complaint on May 2, 2012, and with an amended complaint on May 30, 2012.  The only difference between the Original and the Amended Complaint is found at ¶ 19 (providing copyright registration numbers) and Exhibit G (providing copies of Certificates of Registration for copyrights).  (Dockets 1 and 10).  On May 31, 2012, Stratus filed its Motion to Dismiss for Lack of Personal

PAGE 1

Jurisdiction and/or Improper Venue Or, In the Alternative, Transfer Venue.  (Docket 16).

This motion cited FED. R. CIV. P. 12(b)(2) and 12(b)(3) and 28 U.S.C. § 1406 as the bases

for the relief sought.  The Court denied Stratus' motion on August 24, 2012.  (Docket 31).

As a result of the Court's ruling, Stratus' deadline for answering Alliance's

complaint was September 7, 2012.  *See* FED. R. CIV. P. 12(a)(4)(A).  However, Stratus'

counsel asked, and Alliance agreed, to a two week extension.  (Docket 39-2).  On that

date, however, Stratus did not file a "responsive pleading" as its counsel had represented,

but instead filed two *new* Rule 12 motions to dismiss and for a more definite statement,

(Dockets 34 and 35), and a third motion for a further continuance.  (Docket 36).  This

Court subsequently directed that Stratus' answer would be due fourteen days after the

Court's ruling on Stratus' Rule 12 motions.  (Docket 37).

## ARGUMENTS AND AUTHORITIES

**I.      Defendant's Additional Rule 12 Motions Are Not Properly Before This Court.**

In filing its first motion to dismiss on May 31, 2012, Stratus extinguished its ability

to file additional motions to dismiss or a motion for a more definite statement.  FED. R.

CIV. P. 12(g) requires the consolidation of **all** Rule 12 defenses in a *single* pre-answer

motion.   The omission of an available Rule 12 defense precludes later

presentation of the defense in a subsequent pre-answer motion:

> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion
> under this rule must not make another motion under this rule raising a
> defense or objection that was available to the party but omitted from its
> earlier motion.

FED. R. CIV. P. 12(g)(2); *see also* Adv. Comm. Notes (1966) ("Subdivision (g) has

forbidden a defendant who makes a pre-answer motion under this rule from making a

further motion presenting any defense or objection which was available to him at the time

he made the first motion and which he could have included, but did not in fact include

therein.")  In other words, if a party makes a Rule 12 motion, but omits a defense or

objection then available, the party may not raise that defense or objection in a subsequent

Rule 12 motion. *Larson v. Johnson*, CIV 07-0063-PCT-SMM, 2007 WL 3390883, at *3 (D. Ariz. Nov. 13, 2007). "Rather, the party may raise the defense in its answer, by motion for judgment on the pleadings, or at the trial on the merits." *Id*.

Stratus could, and was thus obligated to, have included its attacks on Counts II, IV, V and VII of the Complaint in its original Rule 12(b) motion to dismiss.  By adopting a piecemeal approach, Stratus lost the opportunity to seek dismissal of Counts II, IV, V and VII under Rule 12(b).  *See Chiliky v. Schweiker*, 796 F.2d 1131, 1136 (9th Cir. 1986) ("Rule 12(g) requires that a party who raises a defense by motion prior to an answer raise all such possible defenses in a single motion; omitted defenses cannot be raised in a second, pre-answer motion"); *rev'd on other grounds*, 487 U.S. 412 (1988).  As the Sixth Circuit explained, "Subdivision (g) contemplates the presentation of an omnibus pre-answer motion in which defendant advances every available Rule 12 defense and objection he may have that is assertable by motion." *Rauch v. Day & Night Mfg. Corp*., 576 F.2d 697, 701 n. 3 (6th Cir. 1978).  A defendant "cannot delay the filing of a responsive pleading by interposing these defenses and objections in piecemeal fashion but must present them simultaneously." *Id.* (emphasis added); *see also Chen v. Cayman Arts, Inc*., No. 10-80236-CIV, 2011 WL 1085646, at *2 (S.D. Fla. Mar. 21, 2011) (A Rule 12(b)(6) motion may be raised "after an initial Rule 12 motion to dismiss in three circumstances; in any Rule 7(a) pleading, in a Rule 12(c) motion, or at trial," but a "second motion to dismiss falls under none of these circumstances.").

Rule 12(g)'s consolidation requirement applies not only to Rule 12(b) defenses, but also to a motion for more definite statement under Rule 12(e).  2-12 Moore's Fed. Prac. — Civ. § 12.21.  Stratus' motion for a more definite statement (Docket 35), is thus similarly improper and should not be considered. *See, e.g.*:*Teasdale v. Heck*, 499 F. Supp. 2d 967, 972 (S.D. Ohio 2007) (motion to dismiss for failure to state a claim waives right to later move for a more definite statement); *Cima v. Wellpoint Healthcare Networks, Inc.*, No. 05-cv-4127-JPG, 2007 U.S. Dist. LEXIS 25771, at *10-11 (S.D. Ill. Apr. 6, 2007)

(Rule 12(g) applies to motions under Rule 12(e)); *DiMaria v. Silvester*, 89 F. Supp. 2d 195, 196 n. 5 (D. Conn. 1999) (Rule 12(e) motion waived under Rule 12(g) "because the defendants failed to consolidate it with their previous Rule 12 motions to dismiss"); *Clark v. Associates Commercial Corp*., 149 F.R.D. 629, 632 (D. Kan. 1993) ("Rule 12(e) motion for a more definite statement" is not exempt "from the rule requiring consolidation of all Rule 12 defenses and objections").

The value of Rule 12(g) in preventing needless delay by requiring a single Rule 12(b) motion is evident in this case.  Stratus was served with the initial Complaint in this matter over five months ago, and still has not filed a responsive pleading.  Even if Stratus' instant motions had merit – and they do not as shown below – they would resolve only a subset of Alliance's claims, leaving core issues – including Stratus' false advertising and unfair competition – still to be litigated.  Stratus' piecemeal strategy has caused needless delay.  Because Stratus' second motion to dismiss and motion for a more definite statement are precluded by Rule 12(g), they should be denied as procedurally improper.[1]

## II.    Stratus' Motion to Dismiss Count II, IV, V and VII for Lack of Standing Fails.

Stratus has loaded its website's source code with meta-keywords based on variations of the "Enemeez" mark (e.g. "Enemeeze" and "Enemeeze generic") as well the "Docusol" mark, in order to divert searches for Alliance's ENEMEEZ and DOCUSOL products to Stratus' website.  Am. Compl. at ¶¶ 47-48.  Stratus does not dispute it engages in this infringing conduct, nor does it contest "ENEMEEZ" and "DOCUSOL" are

---

[1] Stratus also skirts the rules by submitting its motion as three separate filings.  This Court limits motions to seventeen pages.  *See* LR 7.2(e).  To avoid this limit, Stratus filed some thirty pages of its recent briefing, considerably exceeding what is allowed by the Local Rule, by the simple expedient of applying a new caption to different sections of what should have been a single motion.  (Dockets 34-36).  Of course, adding this total to their *first* motion to dismiss, which should have incorporated *all* of these arguments, brings the total to well over forty pages.  *See* (Docket 16).  This strategy is improper.  *Klein v. Demopulos,* 2010 WL 4365840, at *2 (W.D. Wash. Oct. 27, 2010) ("The filing of multiple dispositive motions to avoid the page limits of (the W.D. Wash. Local Rule 7) is strongly discouraged and successive motions may be stricken").

distinctive marks entitled to protection, nor does it deny its scheme has confused consumers into visiting Stratus' website rather than Alliance's site. Stratus instead argues Alliance is the wrong party to claim trademark infringement.

Stratus contends that because Alliance is not the registrant or owner of the ENEMEEZ, ENEMEEZ PLUS and DOCUSOL trademarks ("ENEMEEZ Marks"), it cannot sue for infringement. *E.g.,* Docket 34 at 1-2. Contrary to Stratus' flawed analysis, (Docket 34 at 7-8), Stratus' argument has nothing to do with the standing component of this Court's Article III jurisdiction over a "case or controversy." *E.g., Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 908 (9th Cir. 2011) (Article III standing requires "(1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability.") These elements are met in this case because Alliance and Stratus are competitors, Stratus' trademark infringement is visiting direct injury to Alliance by causing the deflection of visitors bound for Alliance's website to Stratus' website, with the resulting loss of business, sales and customers, and this injury will stop once Stratus is enjoined from infringing the ENEMEEZ marks.

Properly phrased, Stratus' contention is not that this Court lacks Article III jurisdiction, but rather that Alliance supposedly lacks *prudential* standing under § 32 of the Lanham Act. *E.g, Jewel*, 673 F.3d at 913 ("'prudential standing is satisfied when the injury asserted by a plaintiff arguably falls within the zone of interests to be protected or regulated by the statute'"). Such "(s)tanding requirements in intellectual property law 'are primarily rules of substantive law' and depend on whether their respective statutory schemes confer on a party the right to sue." *Brown v. Green*, No. C 12–2113 DMR, 2012 WL 4120379 at *5 (N.D. Cal. Sep. 18, 2012) (quoting *Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.,* 361 F. Supp. 2d 1244, 1248 (E.D. Wa. 2004)). Courts long have held that an exclusive licensee has prudential standing to sue for trademark infringement, and while Alliance's corporate sibling, Enemeez, Inc., owns the ENEMEEZ marks, Alliance has exclusively licensed those marks for years. *See* Exhibit 1 to the Declaration

of Jim Pritchard ("Pritchard Decl."), contemporaneously filed herewith.

### A.    Alliance Is an Exclusive Licensee of the ENEMEEZ Marks.

The owner of the ENEMEEZ marks is Alliance's corporate sibling, Enemeez, Inc., *id.* at ¶ 4. Enemeez, Inc. and Alliance are located at the same business address in Phoenix, Arizona, and Enemeez, Inc. manufactures ENEMEEZ, ENEMEEZ PLUS and DOCUSOL for Alliance. *Id.* at ¶ 3.

Since January 1, 2006, Alliance has been the exclusive licensee of the ENEMEEZ marks. *See* Pritchard Decl. Ex. 1 at 2.  While the license states it is "limited," both Alliance and Enemeez, Inc. intended and agree that the rights conferred are *exclusive*.  As Jim Pritchard, Enemeez, Inc.'s Secretary, explains:

> Since the inception of this license, the right to use ENEMEEZ, ENEMEEZ PLUS and DOCUSOL, including all intellectual property rights associated therewith, ***has always been licensed exclusively to Alliance***.

> It has always been the intent and understanding of the parties that Alliance's License to use ENEMEEZ, ENEMEEZ PLUS and DOCUSOL, including the ENEMEEZ, ENEMEEZ PLUS and DOCUSOL trademarks, was and is an exclusive license.

Pritchard Decl. at ¶¶ 6-7 (emphasis added).

The Lanham Act provides the registrant of a trademark may bring an action for infringement.  15 U.S.C. § 1114(1)(a) (making the person who "without the consent of the registrant," uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" "liable in a civil action by the registrant for remedies").  "Registrant" is defined to include the "legal representatives, predecessors, successors ***and assigns***" of the registrant.  15 U.S.C. § 1127 (emphasis added).

Most courts hold that an exclusive trademark licensee has rights closely akin to ownership and thus has standing to sue.  Jerome Gilson, 3 Gilson on Trademarks § 11.02.  "Under this rationale, an exclusive license is equated with an assignment since no right to use is reserved to the licensor, and the licensee's standing derives from its presumed Stratus as an assignee." *Id.*  Because an exclusive licensee has a property interest in the

trademark, it qualifies as an "assignee of the registrant" for standing purposes.  *See e.g.,* *Telebrands Corp. v. Del Laboratories,* 719 F. Supp. 2d 283, 292-293 (S.D.N.Y. 2010); *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944, 959-60 (W.D. Mich. 2004); *Ultrapure Systems, Inc. v. Ham-Let Group*, 921 F. Supp. 659, 665-66 (N.D. Cal. 1996); *National Football League Properties v. Playoff Corp.*, 808 F. Supp. 1288, 1291 n. 2 (N.D. Tex. 1992); *Shoney's, Inc. v. Schoenbaum*, 686 F. Supp. 554, 563 (E.D. Va. 1988), *aff'd*, 894 F.2d 92 (4th Cir. 1990).

Stratus agrees that "a registrant (***or assignee***) has standing to sue under Section 32 of the Lanham Act," (Docket 34 at 5) (emphasis added), but asserts "the evidence shows that Alliance is neither the registrant nor assignee for any of the asserted trademarks. . . ." *Id.*  However, the evidence in fact demonstrates Alliance *is* an assignee as exclusive licensee of each of the infringed marks.  *See* Pritchard Decl. at ¶¶ 6-7.  On this basis, Stratus' motion should be denied.

### B.    Alliance Is Willing to Join Enemeez, Inc. in its Trademark Actions.

If the Court should find that Alliance's status as an exclusive licensee of the ENEMEEZ Marks is not sufficient to confer standing on Alliance to enforce its federal or state trademark rights, Alliance is willing cure any defect by joining Enemeez, Inc. as a plaintiff in this action to pursue this claim.  *See Brown*, 2012 WL 4120379 at *5 (granting plaintiff leave to join the trademark owner in the action).  Enemeez, Inc. consents to such a joinder. Pritchard Decl. at ¶ 9.

### C.    Alliance May Pursue its Arizona State Trademark Claim.

Stratus makes the additional argument that Arizona law requires trademarks to be registered with the Secretary of State for Arizona.  *See* Docket 34 at 6.  In asserting this supposed requirement, Stratus surgically omits critical language from A.R.S. § 44-1451, which reads in relevant part:

> ***Subject to section 44-1452***, the owner of a mark registered under this article may proceed by civil action against any person who, without the consent of the registrant:  (1).  Uses in this state the registered mark or a mark similar

to the registered mark on or in connection with any goods or services or any container for goods in any manner that is likely to cause confusion, cause a mistake or deceive a person as to (affiliation or origin).

(emphasis added); *but see* Docket 34 at 6 (omitting "Subject to section 44-1452"). Section 44-1452 expressly preserves Arizona's common law trademark rights, stating: "Nothing in this article shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law." A.R.S. § 44-1452. Alliance's Arizona trademark claim is brought under Arizona common law, *see* Am. Compl. at ¶ 83, and is actionable irrespective of registration.

**D.      Ownership and Registration of a Trademark is Not Required to Bring an Unfair Competition Claim Under § 43(a)(1)(a) of the Lanham Act.**

Stratus pushes its motion beyond § 32 of the Lanham Act, 15 U.S.C. § 1114(a), which concerns trademarks, and attacks Alliance's unfair competition claim, brought under § 43(a)(1)(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).  *See* Docket 34 at 5-6. The two statutory provisions are distinct, and Stratus' "standing" argument, inapt as it may be for the trademark claims, is utterly baseless under § 43(a).

Ownership and registration of a trademark is ***not*** a prerequisite to bringing a claim for unfair competition under § 43(a)(1)(a) of the Lanham Act.  Under that section, "*any person*" may sue for unfair competition if he, she, or it "believes that he or she is or is likely to be damaged by such act" by "(a)ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact . . . ." 15 U.S.C. § 1125(a)(1)(A).

The intent of the Lanham Act is "to protect persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127.  Unfair competition claims under the Lanham Act can be, and indeed usually are, completely unrelated to any trademark issue at all.  And when they are predicated on misuse of a trademark, "(o)wnership of the disputed trademark 'is immaterial' to claims brought under § 1125(a) because the statute

grants standing to 'mere users of trademarks.'"  *Brown*, 2012 WL 4120379 at * 3 (citing *Nat'l Licensing Ass'n*, 361 F. Supp. 2d at 1256); *see also Waits v. Frito-Lay*, 978 F.2d 1093, 1109 (9th Cir. 1992) (parties with standing to bring claims under § 1125(a) include parties with a commercial interest in the product wrongfully identified with another's mark or with a commercial interest in the misused mark).  To establish "standing pursuant to the 'false advertising' prong of § 43(a) of the Lanham Act, a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Terrier Network of N. Ca. v. Am. Kennel Club, Inc*., 407 F.3d 1027, 1037 (9th Cir. 2005) (citation omitted).

Alliance alleges sufficient commercial interests in the ENEMEEZ products to meet the standing requirements for bringing claims for federal unfair competition.  "Alliance is the marketer and distributor of Enemeez®," Am. Compl. at ¶ 1, and "Alliance has expended extensive resources in the development, production and marketing of its ENEMEEZ products, and educational materials and brochures for consumers and health care providers concerning the use and benefits of ENEMEEZ and ENEMEEZ PLUS." *Id.* at ¶ 19.  Alliance further alleges Stratus' false advertising and unfair competition with respect to ENEMEEZ has impaired its ability to expand and thrive within its market. *Id.* at ¶ 39.  Because Alliance alleges that Stratus' actions harmed a business in which it has a vested commercial interest, Alliance has standing to bring this claim.

**III.    Stratus' Motion to Dismiss Count VII (Unjust Enrichment) for Failure to State a Claim Fails on the Merits.**

Stratus markets its Vacuant products as generic equivalent substitutes to Alliance's ENEMEEZ products, *see* Am. Compl. at ¶¶ 28-39, when they are not.  "Vacuant and Vacuant Plus do not have the same formulation as, and have not been proven as effective as EMENEEZ and ENEMEEZ PLUS." *Id.* at ¶ 40.  Nor do Stratus' products contain the amount of active ingredient they are advertised to contain. *See Id.* at ¶ 41.  On the other

hand, Vacuant actually "contains a second active laxative ingredient," glycerin, even though "(n)either the Vacuant nor the Vacuant Plus label lists glycerin as an active ingredient." *Id.* at ¶ 42. And so, while Stratus can try to excuse its conduct under the rubric of "fair competition" in a "free market economy," (Docket 34, at 8-9), Stratus' false advertising and unfair competition scheme is actionable under state and federal law.

At trial, Alliance will prove five elements in its claim for unjust enrichment, including: (1) an enrichment by Stratus; (2) an impoverishment by Alliance; (3) a connection between enrichment and the impoverishment; (4) an absence of justification; and (5) an absence of a remedy provided by law. *Community Guardian Bank v. Hamlin,* 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995) (*citing City of Sierra Vista v. Cochise Enter., Inc.,* 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984)).[2] Alliance's Amended Complaint alleges facts in support of the first four elements of this claim: **First** – **An enrichment**: Customers, including drug wholesalers and pharmacies, "pay for, purchase, and dispense Vacuant and Vacuant Plus." Am Comp. at ¶ 39; **Second** – **An impoverishment**: Customers "have ceased paying for, purchasing, recommending and/or dispensing ENEMEEZ and ENEMEEZ Plus." *Id.*; **Third** – **A connection**: "This would not occur unless Defendants had successfully created the false impression among" customers "that Vacuant and Vacuant Plus have the same active ingredients in the same amounts, are formulated in the same way as ENEMEEZ and ENEMEEZ PLUS; are effective for producing rapid bowel movements and/or reducing bowel accidents and incontinence; and have the same clinical benefits as ENEMEEZ and ENEMEEZ PLUS but are cheaper." *Id.*; and **Fourth** – **Absence of justification**: "Vacuant and Vacuant Plus do not have the

---

[2] Stratus asks the Court to weld a sixth element to the tort, a "prior relationship between plaintiff and defendant." *See* Docket 34 at 11 (citing *Doe I v. Wal-Mart Stores, Inc.,* 572 F.3d 677 (9th Cir. 2009)). *Doe,* however, construed California law, and this is not an element under *Arizona's* adoption of the tort. *See, e.g., State v. Arizona Pension Planning,* 739 P.2d 1373, 1376 (Ariz. 1987). Indeed, California law does not even recognize unjust enrichment as an independent tort. *Melchior v. New Line Prods., Inc.,* 131 Cal. Rptr. 2d 347, 357 (Ct. App. 2003). Instead, unjust enrichment "is synonymous with restitution." *Durell v. Sharp Healthcare,* 108 Cal. Rptr. 682, 699 (Ct. App. 2010).

1   same formulation as, and have not been proven as effective as ENEMEEZ and

2   ENEMEEZ PLUS."  *Id*. at ¶ 40, *see also* ¶¶ 41-45.

3       Stratus focuses on the fifth element, "an absence of a remedy provided by law."

4   Docket 34 at 12 (identifying legal remedies provided by the common law, state statute and

5   the Lanham Act).  But this is a legal conclusion, not a factual allegation.  While the

6   availability of another remedy could preclude a duplicative recovery, it cannot prevent

7   Alliance from pleading a claim for relief under this tort ***in the alternative***.  Rule 8 directs:

8       (2)   Alternative Statements of a Claim or Defense. A party may set out 2

9           or more statements of a claim or defense alternatively or
            hypothetically, either in a single count or defense or in separate ones.

10          If a party makes alternative statements, the pleading is sufficient if
            any one of them is sufficient.

11

12      (3)   Inconsistent Claims or Defenses. A party may state as many separate
            claims or defenses as it has, regardless of consistency.

13

14  FED. R. CIV. P. 8(d)(2) & (3); *see also Indep. Enters. Inc. v. Pittsburgh Water and Sewer*,

15  103 F.3d 1165, 1175 (3d Cir. 1997) ("This Rule permits inconsistency in both legal and

16  factual allegations, and has been interpreted to mean that a court may not construe a

17  plaintiff's first claim as an admission against another alternative or inconsistent claim."

18  (quotations and citations omitted)); *Molsbergen v. U.S.*, 757 F.2d 1016, 1019 (9th Cir.

19  1985).  An unjust enrichment claim is not deficient if a complaint also alleges claims at

20  law for alternative forms of relief.  *See In re Digital Music Antitrust Litigation*, 812 F.

21  Supp. 2d 390, 411 n.11 (S.D.N.Y. 2011) (refusing to dismiss state law unjust enrichment

22  claims because an adequate remedy at law existed, holding, "(t)his argument is premature

23  because Plaintiffs may plead in the alternative."); *Yakas v. Chase Manhattan Bank,

24  U.S.A., N.A.*, No. C 09-02964 WHA, 2010 WL 367475, at *7 (N.D. Cal. Jan. 25, 2010)

25  (same.).[3]

26

27  _____
    [3] Stratus' unsupported "standing" argument, (Docket 34 at 11-12), fails both because

28  Alliance has standing to pursue its trademark claims, and also because its unjust
    enrichment claim is based on more than Stratus' trademark infringement.

**IV.    Stratus' Motion for a More Definite Statement Fails on the Merits.**

Stratus' Rule 12(e) motion fails not only because it is procedurally improper, but because it is based on an untenable argument.   In its Amended Complaint, Alliance employed the virtually universal convention of prefacing its enumerated claims with the statement that "Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegation of Paragraphs (XX-XX) above, inclusive."   Am. Compl. at ¶¶ 56, 62, 70, 79, 82, 84, 92.   Ignoring the substance of the remaining 86 paragraphs of Alliance's well-pled Amended Complaint, Stratus argues, based on this convention, Alliance's Amended Complaint is a "shotgun" pleading, that must be re-pled.   This argument fails.

Motions under Rule 12(e) for a more definite statement are disfavored and rarely granted because of the minimal notice pleading requirements of the Federal Rules.  *See Castillo v. Norton*, 219 F.R.D. 155, 163 (D. Ariz. 2003); *see also Flanagan v. Benicia Unified Sch. Dist.*, 2008 WL 435355, at *2 (E.D. Cal. Feb. 14, 2008) ("The situations in which a Rule 12(e) motion is appropriate are very limited.")(quoting 5A Wright and Miller, Federal Practice and Procedure § 1377 (1990)); *Dion, LLC v. Infotek Wireless, Inc.*, 2007 WL 3231738, at *6 (N.D. Cal. Oct. 30, 2007 (motions for a more definite statement are generally viewed with disfavor because they are often used as delaying tactics).  Indeed, "the sufficiency of a complaint does not depend on whether it provides enough information to enable the defendant 'to prepare a defense,' but merely 'whether the document's allegations are detailed and informative enough to enable the defendant to respond.'"  *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 349 (4th Cir. 2005).

A Rule 12(e) motion should be "ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail."  *Castillo*, 219 F.R.D. at 163.  In evaluating a motion under Rule 12(e), the proper test is to determine "whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings."  *Federal Sav. and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1060

(N.D. Cal. 1988).  Courts will require a more definite statement only when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Margarita Cellars v. Pac. Coast Packaging*, 189 F.R.D. 575, 578 (N.D. Cal. 1998).  If the opposing party is fairly notified of the nature of the claim, or the moving party could obtain the missing detail through discovery, the motion should be denied.  *Castillo*, 219 F.R.D. at 163.

The factual allegations against Stratus are spelled out in detail in the "Factual Background" section of Alliance's complaint across eleven page comprising 47 numbered paragraphs.  *See* Am. Comp. at ¶¶ 9-55.  Alliance's allegations that are directed specifically at Stratus refer to "Stratus" by name, *see, e.g.*, *id.* at ¶¶ 46-50, while allegations that were directed solely at Sonar specifically refer to "Sonar" by name.  *See, e.g., id.* at ¶ 38.  Allegations directed at both Stratus and Sonar refer to "Defendants."  *Id.* at ¶ 43.  The "Factual Background" section is replete with specific factual details that support Alliance's false advertising, unfair competition, trademark infringement and copyright infringement claims, including:

- Although "Defendants have represented that Vacuant and Vacuant Plus use the same active ingredients as ENEMEEZ and ENEMEEZ PLUS in the same amounts," Am. Comp. at ¶ 32, "laboratory testing shows that these products contain far different amounts of this ingredient," *id.* at ¶ 32, and Vacuant actually contains a second, unlabeled active laxative ingredient.  *Id.* at ¶ 42.

- Notwithstanding representations that Vacuant "results in faster and more predictable bowel routine along with reducing bowel accidents and incontinence," and produces "no mucosal discharge" or "after burn sensation," *id.* at ¶ 35, "these claims are unsubstantiated," as Stratus has "performed no human testing on Vacuant or Vacuant Plus to determine their products' efficacy in producing bowel movements, or reducing bowel accidents, incontinence, mucosal discharge or 'after burn.'"  *Id.* at ¶¶ 35, 43.

- "Rather than creating its own content for its Vacuant brochure, Stratus copied substantial portions of Plaintiff's copyright-protected EMENEEZ Brochures," including those attached to the Complaint as Exhibits C-F.  *Id.* at ¶¶ 19, 33.

- Stratus intentionally uses DOCUSOL and misspellings of the ENEMEEZ Marks as metatags as meta keywords for its website in a manner that is likely to cause confusion, or to cause mistake, or to deceive customers as to the source,

sponsorship, or approval by Alliance of Stratus' products.  *Id*. at ¶¶ 46-55.

- "Based upon Defendants' commercial advertising and promotion in interstate commerce," customers "pay for, purchase, and dispense Vacuant and Vacuant Plus," while at the same time, they "have ceased paying for, purchasing, recommending and/or dispensing ENEMEEZ and ENEMEEZ PLUS.  This would not occur unless Defendants had successfully created the false impression" among customers, that Defendant's  Vacuant products "have the same active ingredients in the same amounts, are formulated in the same way as ENEMEEZ and ENEMEEZ PLUS; are effective for producing rapid bowel movements and/or reducing bowel accidents and incontinence; and have the same clinical benefits as ENEMEEZ and ENEMEEZ PLUS but are cheaper."  *Id*. at ¶ 39.

Stratus does not even pretend it cannot piece together the bases for Alliance's false advertising, unfair competition, trademark infringement and copyright infringement claims.  Indeed, Stratus – and the Court – were capable of understanding Alliance's Amended Complaint when Stratus brought, and this Court ruled upon, Stratus' initial motion to dismiss for purported lack of personal jurisdiction.  *See, e.g.*, Docket 16 at 8.  At that time, Stratus insisted it was "tempted to engage in a substantive discussion of the complete lack of merit to Plaintiff's claims," but decided "any such discussion is not properly before this Court because this Court lacks jurisdictions over Stratus . . . ."  Docket 30 at 2.  But Stratus in fact is subject to this Court's jurisdiction, *see* Docket 31 at 8, and Stratus now has the opportunity to respond to the merits of Alliance's Amended Complaint by Answering that pleading.

Stratus relies on an ill-conceived, formalist argument that Alliance's Amended Complaint is a "shotgun complaint" because it incorporates by reference previous allegations.  *See* Docket 35 at 6.  This is nonsense.  A shotgun complaints features an "unfocused laundry list of allegations," that are "indefinite and conclusory," and without any specificity as to "which factual allegations support each claim."  *Harrison v. Board of Regents of the University System of Georgia*, 2012 WL 4363737, at *1 (N.D. Ga. Sep. 21, 2012).  Thus, a "shotgun complaint" is a "complaint in which a plaintiff brings every conceivable claim against every conceivable defendant," *i.e.*, a complaint where

"plaintiffs have essentially coughed up an unsightly hairball of factual and legal allegations, stepped to the side, and invited the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two." *Gurman v. Metro. Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).

For example, in *Jones v. Prater*, 2011 WL 70574 (E.D. Cal. Jan. 7, 2011) the court found the plaintiffs' complaint was an "impermissible shotgun pleading" where it alleged six causes of action generally against twenty-two defendants, but failed to link any conduct to any specific defendant(s). *See id.* at *2 ("The lengthy 'Statement of Fact' (sic) is unhelpful in clarifying plaintiff's legal claims, because it details numerous and apparently unrelated incidents over a period of a year.  It is extremely difficult to discern the nature and bases of plaintiff's claims and the identity of the defendants against whom each claim is made").

In *Shehee v. State*, 2010 WL 4880698 (E.D. Cal. Nov. 23, 2010) the court also found the complaint to be a shotgun pleading because the allegations of the complaint spanned more than twelve years, encompassed three federal venues, and sought damages against more than thirty named defendants, as well as "Does #1 through #100." *Id.* at *2-3.  In an example cited by Stratus, *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty Coll.*, 77 F.3d 364, 366 (11th Cir. 1996), the complaint contained six counts each alleging violations of multiple different laws, including the due process and equal protection clauses of the 5th and 14th Amendments, and Article I, Sections 2 and 9 of the Florida Constitution.  The Court found that it was virtually impossible to know which allegations of fact were intended to support which claims for relief.  *See Anderson*, 77 F.3d at 366.

Neither Stratus nor the Court faces the problems here that the courts faced in *Jones, Shehee* or *Anderson*.  Stratus' contention that "until Plaintiff clarifies which of the numerous allegations pertain to which counts, Defendant cannot sufficiently prepare its defenses," is wholly disingenuous.  *See e.g.*, Am. Complaint at ¶¶ 46-55 (describing "Defendant's Infringing Activities"); ¶ *id.* at 57 (describing Stratus' false advertising,

1   including its misrepresentation of the content and character of Vacuant and Vacuant Plus);

2   *id*. at ¶ 106 (alleging Stratus infringed copyrights "By copying and using the ENEMEEZ

3   Brochures without authorization from Plaintiff").

4     Alliance's Amended Complaint goes beyond the dictates of Rule 8 by providing

5   Stratus "fair notice of what (Alliance's) claim is and the grounds upon which it rests."

6   *Pickern v. Pier 1 Imports (U.S.), Inc*., 457 F.3d 963, 968 (9th Cir. 2006).   Courts in this

7   circuit have noted that "(i)t is not necessary, at the pleading stage, that plaintiff break out

8   all of her legal theories into separate 'causes' of action with precise accompanying facts

9   and law as to each one," where, as here, "defendants cannot reasonably complain of

10  failing to understand the nature of plaintiff's complaint."   *Rhodes v. Placer County,* 2011

11  WL 1302240 at *8 n. 10 (E.D. Cal. Mar. 31, 2011); *see also Joe Hand v. Hart*, 2012 WL

12  1289731, at *1 (S. D. Fla. Apr. 16, 2012) ("Although each count of the Complaint does

13  incorporate by reference all of the preceding allegations," complaint was not a shotgun

14  complaint because "the claims are sufficiently definite to enable Defendants to know with

15  what they are charged and to enable Defendants to respond to the allegations").

16

17    Finally, Stratus' desire to exercise a line-item veto power throughout Alliance's

18  pleading, *see* Docket 35 at 9, and its apparent desire that each sentence be set forth as a

19  separate paragraph, *id.,* are unnecessary, impractical and insupportable demands.   "Rule

20  10(b) simply states that if multiple claims are based on a separate set of circumstances,

21  they should be pled in separate counts." *Fleming v. Verizon New York*, 419 F. Supp. 2d

22  455, 468 (S.D.N.Y. 2005)(quoting *Caraveo v. Nielsen Media Research, Inc.,* No. 01 Civ.

23  9609 (LBS), 2002 WL 530993, at *3 (S.D.N.Y. Apr. 8, 2002)).   Here, Alliance's pleading

24  is well-organized, coherent and easily comprehensible.   Stratus' demands must be denied.

25  **<u>CONCLUSION</u>**

26    For all of the foregoing reasons, Defendant Stratus Pharmaceuticals, Inc.'s motions

27  to dismiss and for a more definite statement (Dockets 34 and 35) should be dismissed in

28  their entirety.

DATED this 9th day of October, 2012.

FULBRIGHT & JAWORSKI L.L.P.

By:    *s/Saul Perloff*

SAUL H. PERLOFF
KATHARYN A. GRANT
Attorneys for Plaintiff
Alliance Labs, LLC

### CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2012, I electronically transmitted the foregoing document **Plaintiff's Response In Opposition to Defendant Stratus Pharmaceuticals, Inc.'s Abusive Rule 12 Motions (Docket Nos. 34 and 35)** and the **Declaration of Jim Prichard with its Exhibit 1** to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Attorneys for Def. Stratus Pharmaceuticals, Inc.:

Debora L. Verdier
Benjamin K. Erlick
Sanders & Parks, P.C.
1300 SCF Tower
3030 North Third Street
Phoenix, Arizona 85012-3099
T: 602-532-5760
F: 602- 230-5021
E: ben.erlick@sandersparks.com
E: debora.verdier@sandersparks.com

**Dated this 9th day of October, 2012.**

By:   *s/Dana Thompson*

Dana Thompson
An employee of Fulbright & Jaworski L.L.P.